FILED
11/13/24 4:47 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Case No. 22-21483-GLT |
| : | Chapter 13 |
| **LESLIE C. BLAKEY** and : | |
| **DENISE MICHAUX,** : | |
| : | Related Dkt. Nos. 51, 53, and 55 |
| *Debtors.* : | |
| : | |

| | |
|---|---|
| Daniel R. White, Esq. | Anne N. John, Esq. |
| Tremba, Kinney, Greiner & Kerr, LLC | John & John, Attorneys at Law |
| Connellsville, PA | Uniontown, PA |
| *Attorney for the Debtors* | *Attorney for the Respondent* |

## **MEMORANDUM OPINION**

Following a lapse in Leslie Blakey's and Denise Michaux's (the "Debtors") homeowner's insurance policy, First Federal Savings & Loan Association of Greene County (the "Lender") obtained force-placed insurance that maintained roughly the same level of coverage on their residence.[1] It now seeks reimbursement for the postpetition premiums[2] under section 506(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3002.1(c).[3] The Debtors object, arguing that the premium charged is unreasonable because the Lender over-insured their home with force-placed coverage that was more than four times its fair market value.[4] The Lender counters that it provided a reasonable service authorized by the mortgage documents.[5] Ultimately,

---

[1] See *Response of First Federal Savings & Loan Association of Greene County to Debtors' Objection to Notice of Post-Petition Fees, Expenses, and Charges* ("Response"), Dkt. No. 53 at ¶ 5.

[2] See *Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Supplement to Claim No. 13, dated July 9, 2024 ("First Notice").

[3] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[4] See *Objection to Notice of Post-Petition Mortgage Fees, Expenses, and Charges* ("Objection"), Dkt. No. 51.

[5] *Response*, Dkt. No. 53 at ¶¶ 14-15.

the Court agrees that the excessive coverage renders the premiums unreasonable and will sustain the objection.

## I. BACKGROUND

The Debtors reside at a property located at 16 Oakland Avenue in Uniontown, Pennsylvania (the "Property").[6] It is encumbered by a lien held by the Lender to secure the outstanding balance of $87,541.77 owed on a mortgage loan.[7] The Debtors contend the fair market value of the Property is $135,000,[8] but admit that online market estimates range from $179,000 to $202,000.[9] The Lender neither challenged these assertions nor offered a different range of values.[10]

After the Debtors' homeowner insurance policy lapsed in May 2023, the Lender obtained force-placed insurance on the Property.[11] The policy provided coverage in the amount of $895,000, resulting in an annual premium of $9,437.[12] The Lender filed a notice under Bankruptcy Rule 3002.1(c) to obtain reimbursement of the premium as a postpetition mortgage expense.[13]

In March 2024, the Debtors reinstated their Allstate homeowner's insurance with a policy providing $491,139 in coverage at an annual premium of $2,488.12.[14] After receiving

---

[6]  *Objection*, Dkt. No. 51 at ¶ 4.

[7]  See *Claim No. 13-1*; *Schedule D: Creditors Who Have Claims Secured by Property*, Dkt. No. 17 at 19.

[8]  See *Schedule A/B: Property*, Dkt. No. 17 at 3. The Debtors arrived at this value by taking the Fayette County assessment value of $166,849 and deducting approximately $35,000-$40,000 for needed repairs. Id.; see also *Objection*, Dkt. No. 51 at ¶ 12.

[9]  See *Objection*, Dkt. No. 51 at ¶ 12.

[10]  See *Response*, Dkt. No. 53 at ¶ 12.

[11]  See *First Notice*; see also *Objection*, Dkt. No. 51 at ¶ 4; *Response*, Dkt. No. 53 at ¶ 4.

[12]  See *First Notice*, Ex. 1; see also *Objection*, Dkt. No. 51 at ¶ 6.

[13]  See *First Notice*, Ex. 1.

[14]  See *Objection*, Dkt. No. 51 at ¶ 7; see also *Response*, Dkt. No. 53 at ¶¶ 6-9.

notice of the reinstatement, the Lender cancelled its force-placed policy and credited the Debtors for the balance of the unused premiums.[15] The Lender then filed an amended notice of postpetition fees, reducing the premium reimbursement request to $7,742.28.[16]

The Debtors argue that the premium is patently unreasonable.[17] They contend the policy coverage was excessive because it insured the Property at an amount which was more than four times its best value.[18] The Lender responds that it acted reasonably by procuring loss coverage at a similar level to the Debtors' past policies.[19] Indeed, it is undisputed that the Debtors purchased homeowner's insurance with coverage limits ranging from $834,000 to $992,000 between 2019 and 2024.[20] The Lender therefore insists that it provided a service by maintaining the Debtors' coverage instead of merely protecting its $87,000 interest in the Property.[21] Regardless, the Lender contends that it complied with both applicable law and the mortgage documents which provide it broad discretion to determine an appropriate amount of force-place insurance coverage.[22]

After a hearing on the Debtors' objection, the Court took the matter under advisement.

---

[15] *Objection*, Dkt. No. 51 at ¶ 8; *Response*, Dkt. No. 53 at ¶¶ 6-9.

[16] See *Notice of Postpetition Mortgage Fees, Expenses, and Charges* dated July 9, 2024, supplement to Claim No. 13 ("Second Notice"); see also *Objection*, Dkt. No. 51 at ¶ 9; *Response*, Dkt. No. 53 at ¶¶ 6-9.

[17] *Objection*, Dkt. No. 51 at ¶ 14.

[18] Id.

[19] See *Response*, Dkt. No. 53 at ¶¶ 5, 11, 14-15.

[20] Id. at ¶ 14-15. There is no suggestion that the Debtors were required by the Lender to insure the Property at these levels.

[21] Id.

[22] Id. at ¶ 10.

## II. JURISDICTION

The Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. DISCUSSION

There is no dispute that the Debtors' home hazard insurance coverage lapsed, entitling the Lender to reimbursement for the reasonable cost of force-placed insurance during the break in coverage. That said, the Lender has not demonstrated that it is entitled to recover the full cost of the premium. While the mortgage may authorize some insurance coverage beyond the Lender's interest in the Property, the Court finds the force-placed coverage unreasonable.

Secured creditors holding a lien on the debtor's principal residence may seek reimbursement of their postpetition fees, expenses, and charges under Bankruptcy Rule 3002.1(c) if they receive contractual installment payments in a chapter 13 plan.[23] To prevail, creditors bear the burden of establishing that:

(a) their claim is oversecured;

(b) the requested fees, expenses, or charges are reasonable; and

(c) the fees, expenses, or charges are recoverable under the loan documents and applicable nonbankruptcy law to cure a default or maintain payments under 11 U.S.C. § 1322(b)(5).[24]

---

[23] Fed. R. Bankr. P. 3002.1(a), (c).

[24] See Winnecour v. First Commonwealth Bank (In re Susanek), No. 12-23545-GLT, 2014 WL 4960885, at *3 (Bankr. W.D. Pa. Sept. 30, 2014); see also 11 U.S.C. § 506(b); Fed. R. Bankr. P. 3002.1(e).

Because a reimbursement request under Bankruptcy Rule 3002.1(c) is not entitled to a presumption of validity, the creditor must establish its claim by a preponderance of the evidence.[25]

In this case, the parties entered into a mortgage agreement containing customary language requiring ongoing insurance coverage to protect their interests in the Property. Under paragraph 5 of the *Mortgage* (entitled "Hazard or Property Insurance"), the Debtors have the primary obligation to keep the Property "insured against loss" and in such amounts as the Lender requires.[26] If the Debtors fail in this duty, the *Mortgage* authorizes the Lender (at its option) to obtain force-place insurance "to protect Lender's rights in the Property in accordance with paragraph 7."[27] Paragraph 7 of the *Mortgage* provides that "Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property."[28]

A plain reading of the *Mortgage* does not justify Lender's purchase of insurance coverage substantially exceeding the Property's value. Paragraph 5 is the only section in the *Mortgage* that specially addresses force-placed insurance, and it limits the remedy to the amount necessary "to protect Lender's rights" in the Property. Here, the Lender's rights consist of its mortgage lien and the roughly $87,000 of debt it secures. Notably, paragraph 5 is silent about protecting anything else, including the Debtor's equitable interest. By contrast, paragraph 7 is a broader provision that authorizes the Lender to act "to protect the value of the Property" should the Debtors fail to perform their covenants and agreements. At best, it allows the Lender to insure the Debtor's full interest in the property at an amount consistent with its fair market value. While

---

[25] See Fed. R. Bankr. P. 3001(f), 3002.1(d); see also In re Allegheny Int'l, Inc., 954 F.2d 167, 174 (3d Cir. 1992).

[26] See *Mortgage* dated April 30, 2014 attached as an exhibit to *Claim No. 13* ("Mortgage"), at ¶ 5.

[27] Id.

[28] Id. at ¶ 7.

5

exact precision is impossible given that market value is moving target, paragraph 7 simply does not permit the Lender to completely untether its actions under the guise of "protection."

Aside from the contractual obligations, federal regulations require that "all charges related to force-placed insurance … must be bona fide and reasonable."[29] The Lender emphasizes that a "bona fide and reasonable charge is a charge for a service actually performed that bears a reasonable relationship to the [lender's] cost of providing the service, and is not otherwise prohibited by applicable law[.]"[30] As such, the Lender contends that it is merely passing on the undisputed actual cost of the force-placed premium.

The Lender's focus on its out-of-pocket expense misses the point: *it is objectively unreasonable under section 506 to insure a Property for more than four times its value.* Frankly, there is no evidence that an insurer would even pay out more than the replacement cost of the Property. Thus, if the Property is worth somewhere between $135,000 and $200,000, then reasonable loss coverage should surpass that range only as a hedge against plausible appreciation. Any premium for coverage beyond that is unnecessary, wasteful, and likely devoid of any real benefit.

It is also no excuse for the Lender to point to the Debtors' past conduct since it too was unreasonable. But at least they chose that for themselves, rather than having the financial burden foisted on them as a "service." This is particularly true since force-placed insurance is already more expensive than insurance purchased by homeowners. The Court also suspects that the Lender's coverage selection was likely born of administrative convenience, not altruism. In

---

[29]   12 CFR 1024.37(h)(2).
[30]   Id.

sum, it should be no surprise that the Lender would be held to an objective standard of reasonableness under the circumstances.

To the extent the Lender believes this result adversely impacts its existing business practices, the wound is self-inflicted. The *Mortgage* terms are within the Lender's control, so its practices should conform to its contractual rights and obligations. That said, the issue here seems more a failure of diligence than drafting because reasonableness is objective. Any potential exposure from force-placed insurance could be eliminated by simply confirming the property's range of value before obtaining a new policy. And while protecting a homeowner's equity when they fail to do so is laudable, it will always be easier to prove the reasonableness of protecting the mortgagee's interest alone. Presumably, this is why the issue does not arise more frequently.

## IV.    CONCLUSION

In light of the foregoing, the Court will enter an order sustaining the Debtors' objection. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: November 13, 2024

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case Administrator to mail to:
Debtors